[No. D007473. Fourth Dist., Div. One. Oct. 18, 1989.]

TUAN THAI, a Minor, etc., Plaintiff and Appellant, v.
GARY STANG, Defendant and Respondent.

**COUNSEL**

Kim Newbrough and Matthew G. Markham for Plaintiff and Appellant.

Haight, Brown & Bonesteel, Roy G. Weatherup, William G. Baumgaertner and Kenneth C. Byrne for Defendant and Respondent.

_____

## OPINION

**TODD, J.**—Tuan Thai appeals from a judgment of dismissal entered after the trial court granted a motion for summary judgment and from an order denying his motions for reconsideration and a new trial. At issue was whether Gary Stang, doing business as Skateworld Roller Rink, was liable for injuries Thai suffered as a result of a drive-by shooting that occurred as he was about to enter Stang's business.

### FACTS

Shortly before 3 p.m. on October 6, 1984, Thai was standing outside the entrance of Skateworld Roller Rink when an automobile on Linda Vista Road drove by the business. The occupants of the vehicle fired shots from the automobile with an automatic rifle, "spraying" the entrance to the rink. Thai was struck twice. His spinal cord was severed and he was paralyzed. Thai was not the intended victim; rather, the target had been his companion who was a rival gang leader.

Thai's first amended complaint named Stang, among others, as a defendant. The complaint asserted a cause of action for premises liability against Stang, alleging he "negligently maintained, managed, controlled, and operated" his business because he had actual or constructive knowledge of "numerous incidents of violence" which had occurred in his parking lot, and failed to hire or train "adequate security protection" for his customers.

Stang moved for summary judgment, urging (1) he did not have a duty to prevent the shooting largely because the drive-by shooting was unforeseeable and (2) he could not have prevented it from occurring in any event. In the 12 years Stang had operated the roller rink, Thai was the first customer who had been injured by a third person using a weapon. Before the shooting, the only crimes which had occurred on the premises were two automobile break-ins, several fistfights between teenagers, one burglary and an incident in which a relative of a roller rink employee was struck with a hard object. Stang and/or his employees would periodically patrol the parking area to check for loitering, consumption of alcohol and/or drug and other forms of misbehavior. Detective Joann Welter of the San Diego Police Asian Gang Detail opined the presence of a security guard on the premises on the day of the shooting "absolutely" would not have prevented the

shooting. Further, the assailant who fired the shots that struck Thai said in a deposition that the presence of a security guard on the day of the shooting would not have made "any difference."

In his opposition to the summary judgment motion, Thai contended the shooting was foreseeable because of a history of adolescent delinquent behavior and criminal conduct on the premises of the roller rink and in the immediate vicinity. Thai also contended that the shooting likely could have been prevented with adequate security measures. Thai's counsel presented a declaration in which he related the following comments of the owner of a security company that provided security services to the shopping center adjacent to the roller rink: (1) racial violence had occurred at a business located near the roller rink; and (2) five years before the Thai shooting a Black youngster had been shot and killed in a drive-by shooting behind the shopping center.[1] In his own declaration, Thai said "about three or four times" before he was injured he saw several customers of the rink ejected because they were in fistfights. Phu Trieu, another patron of the roller rink, said in a declaration that three days before Thai was shot, he saw another person threatened with a rifle in the parking lot of the roller rink. Trieu also said earlier on the day of the Thai shooting shots were fired at him while he was in his car in a parking lot near the roller rink.

The trial court granted the summary judgment motion on October 14, 1987. Judgment was entered in favor of Stang on November 23, 1987, and notice of entry of judgment was served on November 24, 1987.

On October 26, 1987, Thai filed a motion seeking reconsideration on the basis of new facts. Thai contended the deposition of San Diego Police Detective Felix Zavala, taken after his opposition papers had been filed, constituted new facts. Thai also submitted a declaration from a security expert who opined that if a uniformed security guard had been assigned to the rink on the day of the Thai shooting, the shooting "probably would not have occurred." Stang opposed the motion for reconsideration, arguing Thai had not demonstrated a different state of facts and had failed to provide a satisfactory explanation for failing to produce Zavala's deposition testimony at the hearing for summary judgment motion. Stang pointed out Thai had failed to request a continuance of the summary judgment hearing even though Stang's counsel had offered to continue the hearing at Zavala's

---

[1] The attorney's declaration also related comments by Max Burnett, who was employed by Skateworld as a door monitor to prevent the admittance of intoxicated persons and to enforce a rule that potentially dangerous jewelry, such as studded wristbands, were checked at the door. The trial court sustained Stang's objections to the bulk of the attorney's declaration (including his relating the comments of the security company owner and Burnett) on the basis of hearsay.

deposition. The motion for reconsideration was denied on December 29, 1987. Thai then moved for a new trial, which was denied by operation of law on January 23, 1988.

#### DISCUSSION

#### I

The standard of review for summary judgment is well established.

Code of Civil Procedure section 437c, subdivision (c), provides in part, that "[a] motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

■ "[T]he purpose of a summary judgment 'is to expedite litigation by avoiding needless trials' . . . ." (*Burton* v. *Security Pacific Nat. Bank* (1988) 197 Cal.App.3d 972, 976-977 [243 Cal.Rptr. 277].) Yet, this " 'summary procedure is drastic and should be used with caution so that it does not become a substitute for the open trial method of determining facts.' " (*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 852 [94 Cal.Rptr. 785, 484 P.2d 953], quoting *Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].) ■ The moving party has the burden to furnish supporting documents establishing the claims of the adverse party are entirely without merit on any legal theory. (*Lipson* v. *Superior Court* (1982) 31 Cal.3d 362, 374 [182 Cal.Rptr. 629, 644 P.2d 822].) The moving parties' affidavits must set forth facts entitling them to a judgment as a matter of law. (*Ibid.*)

#### II

We first address whether liability should be precluded as a matter of law.

Civil Code section 1714 provides: "(a) Everyone is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person . . . ." ■ The elements of a cause of action for negligence are commonly stated as (1) a legal duty to use due care; (2) a breach of that duty; (3) a reasonably close causal connection between that breach and the resulting injury; and (4) actual loss or damage. (Prosser & Keeton, The Law of Torts (5th ed. 1984) § 30, pp. 164-165; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 488, p. 2749.)

■ "The question of 'duty' is decided by the court, not the jury. [Citations.]" (*Ballard* v. *Uribe* (1986) 41 Cal.3d 564, 572, fn. 6 [224 Cal.Rptr. 664, 715 P.2d 624].) ■ In the typical negligence action, a determination that there is no duty giving rise to liability is essentially a conclusion that the weight of public policy warrants a departure from Civil Code section 1714. In *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], the Supreme Court set forth the considerations that should be balanced: "[T]he major ones are the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved."

■ "Generally a person does not have a duty to control another's conduct or to warn those who may be endangered by such conduct. However, a duty may arise where a special relationship exists giving rise to a right to such protection. [Citation.]" (*Donnell* v. *California Western School of Law* (1988) 200 Cal.App.3d 715, 719 [246 Cal.Rptr. 199].) Here we have a special relationship between Stang's Skateworld and Thai, namely that of a business and its customer. ■ "The special relationship between a business establishment and its customers as a matter of law places an affirmative 'duty' on the proprietor to take reasonable precautions to protect patrons from *reasonably anticipative* criminal conduct of unknown third parties." (*Lopez* v. *McDonald's Corp.* (1987) 193 Cal.App.3d 495, 504 [238 Cal.Rptr. 436], original italics.) Thus, here the issue is whether the drive-by shooting of Thai reasonably could have been anticipated.

■ In the context of a premises liability case, the court uses the *Rowland* analysis, weighing the foreseeability of harm with the other criteria and policy considerations in determining whether liability should be imposed given the facts of the specific case. (*Lopez* v. *McDonald's Corp., supra,* 193 Cal.App.3d at p. 506.) "[T]he 'court's task—in determining "duty"—is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party.' " (*Id.* at p. 507, quoting *Ballard* v. *Uribe, supra,* 41 Cal.3d at p. 572, fn. 6.)

"The degree of foreseeability necessary to warrant the finding of a duty will . . . vary from case to case. For example, in cases where the burden of

preventing future harm is great, a high degree of foreseeability may be required. [Citation.] On the other hand, in cases where there are strong policy reasons for preventing the harm, or the harm can be prevented by simple means, a lesser degree of foreseeability may be required. [Citation.]" (*Gomez* v. *Ticor* (1983) 145 Cal.App.3d 622, 629-630 [193 Cal.Rptr. 600].)

In *Gregorian* v. *National Convenience Stores, Inc.* (1985) 174 Cal.App.3d 944 [220 Cal.Rptr. 302], the plaintiff was severely injured after being attacked and beaten while shopping at the defendant's market. The defendant filed a declaration by its corporate risk manager stating this was the first incident of criminal activity at the store. The trial court found as a matter of law the defendant did not owe a duty of care to protect the plaintiff from an unforeseeable criminal attack by a third party. The Court of Appeal affirmed, stating there was no duty on the part of the defendant to protect the plaintiff "from the sudden attack of a ruthless youth gang." (*Id.* at p. 949.) The Court of Appeal continued: "Not only are there no allegations of prior similar incidents occurring at the market, there are no facts which indicate that the store is located in an area where gang activity and criminal assaults are common. Taken as a whole, there is nothing in the record to support the claim that defendants possessed knowledge of criminal activities any more precise than the knowledge of any citizen residing and working in the County of Los Angeles. [¶] . . . 'Anyone can foresee that a crime may be committed anywhere at any time. But that foreseeability which the owners of rental property or the proprietors of public premises share with the public at large, does not, per se, impose a duty on such property owners or proprietors to [institute security measures].' " (*Ibid.,* quoting *7735 Hollywood Blvd. Venture* v. *Superior Court* (1981) 116 Cal.App.3d 901, 906 [172 Cal.Rptr. 528].)

In *Lopez* v. *McDonald's Corp., supra,* 193 Cal.App.3d 495, an assailant entered defendant's restaurant and killed and wounded as many customers as he could before he was killed by police. The plaintiffs in *Lopez* alleged the defendant failed to provide adequate security measures to protect customers. This court concluded the plaintiffs' reliance on evidence of theft-related crimes near the restaurant and other crimes in the surrounding area was misplaced: "First, as to the foreseeability of harm to plaintiffs, the theft-related and property crimes of the type shown by the history of its operations, or the general assaultive-type activity which had occurred in the vicinity bear no relationship to purposeful homicide or assassination. In other words, under all the circumstances presented, the risk of a maniacal, mass murderous assault is not a hazard the likelihood of which makes McDonald's conduct unreasonably dangerous. Rather, the likelihood of this *unprecedented murderous assault was so remote and unexpected that, as a matter of law, the general character of McDonald's nonfeasance did not*

facilitate its happening." (*Id*. at p. 509.) ■ Here, as in *Lopez, supra,* 193 Cal.App.3d 495 and *Gregorian, supra,* 174 Cal.App.3d 944, there was no evidence proffered that would have reasonably forecast a potentially homicidal act. Thai has not presented any admissible evidence that would have put Stang on notice that a daytime drive-by shooting of someone on his business premises was a real possibility, yet alone a likely event. We conclude as a matter of law the drive-by shooting of Thai was an unforeseeable criminal attack by a third party.

An analysis and weighing of the other *Rowland, supra,* 69 Cal.2d 108, criteria, bolsters our conclusion that liability does not attach here.

Certainly, there is no doubt that Thai suffered serious injury. But there is not a close causal nexus between Stang's purported nonfeasance and Thai's injuries. Given the random nature of drive-by shootings, which makes them difficult to police against, we do not discern how Stang could have prevented Thai's injuries. The police detective assigned to the gang detail for the neighborhood opined the presence of a security guard would not have prevented the drive-by shooting. The assailant said a uniformed security guard would not have prevented him from shooting at Thai's companion. Furthermore, within the context of the third party criminal conduct involved here, no moral blame attaches to Stang. (*Lopez, supra,* 193 Cal.App.3d at p. 512.) While we do not minimize the policy of preventing future harm, imposing a duty to protect against drive-by shootings would place an onerous burden on business owners. Moreover, when the burden of preventing future harm is great, a high degree of foreseeability is required. (*Issacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 125 [211 Cal.Rptr. 356, 695 P.2d 653].) Here, as discussed above, the event was not foreseeable.

In light of all these circumstances, Stang owed no duty of care to protect Thai from an unforeseeable drive-by shooting.

### III

■ Assuming arguendo that Stang did owe a duty of care, we conclude no liability should attach because Stang's purported negligence was not a proximate cause of Thai's injury as matter of law.[2]

■ The question of whether a defendant's breach of his duty of care caused the plaintiff's injury is usually a jury question, but where reasonable

---

[2] Actionable negligence involves: (1) a legal duty to use due care; (2) a breach of that duty, and (3) a proximate or legal causal connection between the breach and the injuries suffered by the plaintiff. (*United States Liab. Ins. Co.* v. *Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 594 [83 Cal.Rptr. 418, 463 P.2d 770].)

persons will not challenge the absence of causality, the court may treat the issue as one of law and take the decision from the jury. (*Constance B.* v. *State of California* (1986) 178 Cal.App.3d 200, 207 [223 Cal.Rptr. 645].) "The standard is high for finding as a matter of law that the material facts show a lack of causality . . . , but it is not unmeetable." (*Ibid.*)

 Thai contends Stang's failure to provide an unarmed security guard was a proximate cause of his injuries. The issue boils down to whether the lack of an unarmed security guard contributed in some way to the drive-by shooting. (*Valdez* v. *J. D. Diffenbaugh Co.* (1975) 51 Cal.App.3d 494, 508 [124 Cal.Rptr. 467].)

In his motion for summary judgment, Stang presented evidence—the assailant's deposition testimony and that of Detective Welter—that the presence of a security guard in the parking lot would not have prevented the drive-by shooting. In the face of this uncontradicted evidence, Thai, in his opposition to the summary judgment motion, made no showing that a security guard in the parking lot would have prevented the drive-by shooting. On this record, we conclude Thai has failed to establish any triable issue that there was a causal connection between Stang's failure to supply a security guard and his injuries. "[I]f the same harm, both in character and extent, would have been sustained even had the actor taken the required precautions, his failure to do so is not even a perceptible factor in bringing it about and cannot be a substantial factor in producing it." (Rest.2d Torts, § 432, subd. (1), com. b.)

IV

 Thai contends it was error for the trial court to deny his motions for reconsideration and a new trial. The contention is without merit.

Thai's motions were made on the ground that a different state of facts exists. The new facts consisted of the October 6, 1987, deposition testimony of San Diego Police Detective Felix Zavala and a declaration by Charles Sennewald, a security management consultant, who, after reading Zavala's deposition testimony, opined that if a professional uniformed security officer had been on duty outside the roller rink, the drive-by shooting probably would not have occurred.

The trial court explained his denial of the motion for reconsideration as follows: "The Court: Well, Mr. Markham, as you may recall, when this matter was argued [at the summary judgment hearing], you indicated that depositions of police officers had not been taken and/or had been taken, but you didn't have the transcripts, and at that time I asked you for an offer of

proof as to what would be satisfied if they were deposed, and you made such an offer, and I indicated, even if that's what they say, I don't think it makes any difference on the motion for summary judgment, given the nature of this very unfortunate incident of a drive-by shooting.

"I have looked at the deposition transcript of Officer [Zavala], and he indicates, as pointed out in the opposition, that he doesn't feel that the presence of a security guard outside of the skating rink premises would have made any difference. With respect to the [Sennewald] declaration, ostensibly that is based upon his knowledge and experience, of the deposition of the police officers who are familiar with the area. His conclusion . . . that a security guard, in his opinion, would have prevented this incident, number one, is not based upon the officer's testimony, and, number two, is, as far as I'm concerned, pure speculation that raises no triable issue.

"Cloaking a man with the aura of ostensible expertise and saying he feels that, had there been a security guard out there, this crazy wouldn't have taken a pot shot at your client, to me, has absolutely no force and effect. That is the basis of the ruling[,] i.e., there are no new facts." We agree with the trial court that Zavala's deposition and Sennewald's declaration did not, as a matter of law, constitute new facts. We conclude Zavala's deposition did not raise a material issue of fact with respect to foreseeability or proximate cause, and Sennewald's declaration did not raise a material issue of fact with respect to proximate cause.

In the course of his 67-page deposition, Zavala, who was a member of the Asian Gang Detail from late 1983 to late 1984, testified that during this time a number of crimes, including drive-by shootings, were committed in the Linda Vista area by Vietnamese/Asian gangs. Zavala estimated there were reports of between 10 to 15 drive-by shootings in the area during this period, but not all were verified and some turned out to be stabbings rather than shootings. Zavala also stated that one gang, the Black Jackets, tended to congregate near the roller rink.

Thai has emphasized those portions of the deposition, among others, dealing with the level of gang behavior and crime in the Linda Vista area and also has made much of the fact that during the deposition Zavala did not dispute the idea that deterrence of crime via "high visibility" generally could be effectuated by the presence of a licensed uniformed security guard. However, we view this as a rather selective emphasis on what Detective Zavala had to say. For example, Zavala was asked, "[I]n your training and experience as an officer, would such a uniformed security person have generally a deterrent effect on delinquent activities in that specific area?" Zavala responded, "In my opinion, a security guard in that area wouldn't

help." Later, Zavala was asked, "In your opinion as an officer familiar with the Asian Gangs, based on what you said about the dislike of security guards by Vietnamese individuals, do you think a security guard would deter a drive-by shooting?" Zavala responded, "My opinion, no."

We fail to see how Zavala's deposition testimony raises an issue of fact as to the foreseeability of a drive-by shooting at Skateworld. Further, although he did not dispute the suggestion a security guard could provide a "high visibility" approach to deter crime, he more consistently and specifically opined that the presence of a security guard at Skateworld on October 6, 1984, would not have prevented the drive-by shooting.

Sennewald's two-page declaration essentially consists of (1) his distinguishing this case from *Lopez, supra,* 193 Cal.App.3d 495, because of differences in the two cases between the assailants and between the business premises and (2) his industry-serving pronouncement that "[t]he presence of professional uniformed security officers is a known deterrent to criminal activity." The only reason that he supplies for the deterrent effect is that security officers represent possible witnesses to the criminal activity. He concludes: "Had there been a professional uniformed security officer assigned to the exterior of the rink on the date in question, in my judgment, the shooting probably would not have occurred." Sennewald's declaration was based on a review of Zavala's deposition testimony, portions of the summary judgment motion and portions of the opposition to it, the reporter's transcript for the hearing on the motion for summary judgment and the opinion in *Lopez, supra,* 194 Cal.App.3d 495. There was no showing Sennewald visited the scene, interviewed Thai or the assailants, or even reviewed the police reports.

Given the basis for Sennewald's declaration and its contents, we agree with the trial court that it was not competent evidence because it was "pure speculation." ██ It has been noted that "it is for the trial court, in the exercise of sound discretion, to determine the competency and qualifications of an expert witness to give an opinion, and its ruling will not be disturbed on appeal unless a manifest abuse of that discretion is shown." (*Redevelopment Agency* v. *First Christian Church* (1983) 140 Cal.App.3d 690, 702 [189 Cal.Rptr. 749].) The *Redevelopment Agency* court added, "[A]ppellate courts give wide latitude to trial courts in determining whether the matters relied upon by experts in forming opinions are too speculative." (*Id.* at p. 703.)

██ We conclude as a matter of law Thai did not present new facts sufficient to raise triable issues of fact with respect to foreseeability or

proximate cause and his motions for reconsideration and a new trial were properly denied.

## DISPOSITION

Judgment affirmed.

Kremer, P. J., and Froehlich, J., concurred.