**Filiberto GUERRERO and Maria Guerrero, individually and as representatives of the estate of Blanca Margarita Guerrero Moyeda, Deceased, and as next friend of Jacklyn Dennise Moyeda, Christian Paul Moyeda, Carlos Enrique Moyeda, and Bianca Jazmine Moyeda, Appellants,**

**v.**

**MEMORIAL MEDICAL CENTER OF EAST TEXAS, Appellee.**

No. 09–95–305 CV.

Court of Appeals of Texas, Beaumont.

Submitted Sept. 19, 1996.

Decided March 6, 1997.

2. Now Tex.Health & Safety Code Ann. (Vernon 1992).

Nick H. Johnson, A. Craig Eiland, T. Bryan Akin, III, Houston, for appellants.

R. Scott Fraley, Elizabeth Fraley, J. Patrick, Bredehoft, Fraley & Fraley, Dallas, Jo Ben Whittenburg, Orgain, Bell & Tucker, Beaumont, for appellee.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

STOVER, Justice.

Appellants, the minor children and parents of Blanca Guerrero Moyeda, appeal the granting of a summary judgment in favor of appellee, Memorial Medical Center of East Texas ("MMC"). Blanca Moyeda was shot on March 20, 1993, by her husband, Enrique Moyeda, while she was at her employment at MMC.

Appellants sued MMC for negligence in failing to exercise reasonable care and diligence in providing security to ensure the safety of its employee, Blanca Moyeda. Appellee filed its motion for summary judgment on the grounds that a premises owner owes no duty to protect an invitee from the criminal act of a third party unless the criminal act was specifically or generally foreseeable. The trial court granted summary judgment for MMC. In a single point of error, appellant contends the trial court erred in granting the summary judgment.

For a defendant to obtain summary judgment, he must either negate at least one element of the plaintiff's theory of recovery or plead and conclusively establish each element of an affirmative defense. *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995). The movant-defendant may accomplish this by offering summary judgment evidence showing that at least one element of non-movant's cause of action has been established conclusively against the non-movant. Once the defendant produces sufficient evidence to establish the right to summary judgment, the plaintiff must present evidence sufficient to raise a fact issue as to the elements negated. *Id.* Evidence favorable to the non-movant must be accepted as true and every reasonable inference indulged in the nonmovant's favor. *Id.*

Liability in negligence is premised on the finding of a duty, a breach of that duty which proximately causes injuries, and damages resulting from that breach. *Bird v. W.C.W.,* 868 S.W.2d 767, 769 (Tex.1994); *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d

523, 525 (Tex.1990). The threshold inquiry in a negligence case is whether the defendant owes a legal duty to the plaintiff. *Id.* The existence of duty is a question of law for the court to decide from the facts surrounding the occurrence in question. *Id.* In determining whether to impose a duty, the court must consider the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden on the actor. *Bird,* 868 S.W.2d at 769; *Otis Eng'g. Corp. v. Clark,* 668 S.W.2d 307, 309 (Tex.1983). Of all these factors, foreseeability of the risk is the foremost and dominant consideration. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987). In the absence of foreseeability, there is no duty. *Nations-Bank N.A. v. Dilling,* 922 S.W.2d 950, 954 (Tex.1996).

As a general rule, a person is under no duty to control the actions of third persons absent a special relationship, such as master/servant or parent/child. *See Triplex Communications, Inc. v. Riley,* 900 S.W.2d 716, 720 (Tex.1995). The rule is taken from RESTATEMENT (SECOND) OF TORTS § 315 (1965), which provides as follows:

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
>
> (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
>
> (b) a special relation exists between the actor and the other which gives to the other a right to protection.

In the instant case, there was no special relationship between MMC and Enrique Moyeda that would give MMC a duty to control the actions of Enrique.

As a general rule, a person also has no legal duty to protect another from the criminal acts of a third person or to control the conduct of another. *Walker v. Harris,* 924 S.W.2d 375, 377 (Tex.1996); *Centeq,* 899 S.W.2d at 197; *Otis Eng'g Corp.,* 668 S.W.2d at 309; RESTATEMENT (SECOND) OF TORTS § 315(b). This general no-duty rule, however, is not absolute; there are exceptions.

For example, in the landlord/tenant relationship, a landlord who retains control over the security and safety of the premises owes a duty to the tenant's employee to use ordinary care to protect the tenant's employee against an unreasonable and foreseeable risk of harm from the criminal acts of third parties. *See Exxon Corp. v. Tidwell,* 867 S.W.2d 19 (Tex. 1993). Similarly, a landowner has no legal duty to protect another (invitee) from the criminal acts of a third person unless the landowner knows or has reason to know of an unreasonable risk of harm to the invitee. *Butcher v. Scott,* 906 S.W.2d 14, 15 (Tex. 1995). This duty is derived from the principle that a party who has the power of control or expulsion is in the best position to protect against the harm. The right to control the premises is, thus, one of the factors that determines whether a legal duty should be imposed on the owner or possessor of the premises. *Id.*

The criminal conduct of a third party may be a superseding cause that relieves the negligent actor from liability. *See Nixon v. Mr. Property Management,* 690 S.W.2d 546, 550 (Tex.1985); RESTATEMENT (SECOND) OF TORTS § 448 (1965). However, the actor's negligence is not superseded and will not be excused when the criminal conduct of a third party is a foreseeable result of such negligence. *Travis v. City of Mesquite,* 830 S.W.2d 94, 98 (Tex.1992).

■ Under principles of agency law, employers are responsible for providing a safe work place to their employees. *Exxon Corp. v. Tidwell,* 867 S.W.2d 19, 21 (Tex.1993). *See also Brooks v. Nat'l Convenience Stores, Inc.,* 897 S.W.2d 898, 902 (Tex.App.—San Antonio 1995, no writ). Employees of an owner or occupier are considered invitees of their employer. *Hernandez v. Heldenfels,* 374 S.W.2d 196, 197 (Tex.1963). In the employer/employee relationship, an employer is not an insurer of the employee's safety, but the employer does have a duty to use ordinary care in providing a safe work place. *See Werner v. Colwell,* 909 S.W.2d 866, 869 (Tex.1995); *Tidwell,* 867 S.W.2d at 21.

■ As in the landlord/invitee situation, whatever duty an employer may have to

protect employees injured on the premises against the criminal acts of third parties, that duty does not arise in the absence of a foreseeable risk of harm. *See Graham v. Atlantic Richfield Co.,* 848 S.W.2d 747, 752 (Tex.App.—Corpus Christi 1993, writ denied). Accordingly, MMC is entitled to summary judgment if it establishes as a matter of law that Enrique Moyeda's violent criminal act against Blanca Moyeda was not foreseeable. Foreseeability requires only that the general danger, not the exact sequence of events that produced the harm, be foreseeable. *Walker,* 924 S.W.2d at 377; *Lofton v. Texas Brine Corp.,* 777 S.W.2d 384, 387 (Tex. 1989); *Nixon,* 690 S.W.2d at 550–551.

In determining whether criminal acts of third parties are foreseeable, Texas courts apply RESTATEMENT (SECOND) OF TORTS § 344 and specifically rely upon comment f of that section. Comment f states:

> Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

RESTATEMENT (SECOND) OF TORTS § 344 cmt. f. (1965). *See also Graham,* 848 S.W.2d at 751; *Kendrick v. Allright Parking,* 846 S.W.2d 453, 456–457 (Tex.App.—San Antonio 1992, writ denied); *Garner v. McGinty,* 771 S.W.2d 242, 244–246 (Tex.App.—Austin 1989, no writ). The test for foreseeability has two prongs—specific and general. *See Graham,* 848 S.W.2d at 751; *Garner,* 771 S.W.2d at 245.

(a) Specifically, did the landowner or occupier realize or should he have realized the likelihood that such acts were occurring or about to occur?

(b) Generally, did the landowner or occupier know or have reason to know from past experience of a likelihood of conduct on the part of a third person in general which would endanger the safety of invitees?

■ We review the summary judgment evidence to determine whether MMC negated foreseeability as a matter of law and whether appellants raised a fact issue concerning that element.

## APPELLEE'S SUMMARY JUDGMENT EVIDENCE

In support of its motion for summary judgment, MMC submitted affidavits from Lois Sparks, housekeeping supervisor at MMC; Officer Laverne Ross, security guard in MMC's security department; Edd Terrell, chief of security at MMC; Michael Taylor, director of Human Resources at MMC; Keith Lewing, custodian of records for the Lufkin Police Department; certain Lufkin Police Department records; and deposition excerpts from Blanca Moyeda's father, mother, and sister.

1.  Ms. Sparks stated in her affidavit that prior to the day of the shooting, Enrique had visited his wife on several occasions at the hospital without incident.

2.  Ms. Sparks said she had overheard co-workers of Blanca say that Blanca told them Enrique verbally abused her when he had been drinking.

3.  On March 19, 1993, Sparks heard yelling in the stairwell. When Sparks opened the door to the stairwell, she saw someone running up the stairs away from Blanca. Investigating the matter, Sparks discovered that Enrique had approached Blanca, taken her by the arm, and tried to get her to leave the hospital with him. Blanca refused.

4.  Sparks reported the incident to the security department of the hospital.

5.  Officer Ross confirmed in his affidavit that he received a call from housekeep-

ing regarding the incident. Ross talked to Blanca after the incident. He also located Enrique and asked him to leave the premises. Enrique did so.

6. At 6:50 a.m. on March 20, 1993, Sparks received a call from Blanca, who asked Sparks to meet her in the hospital parking lot when Blanca arrived for her 7:00 a.m. shift. Blanca was concerned her husband might be waiting for her in the parking lot. Sparks refused to meet her, but did request security to do so. Security guards Ross and Pederzani met Blanca in the parking lot and escorted her into the building. At that time, the officers also saw Enrique at the parking lot and attempted to talk with him, but Enrique ran away. The officers searched, but were unable to locate him.

7. In his affidavit, Officer Ross stated he next saw Enrique at about 9:00 a.m. by the hospital elevators on March 20, 1993. Taking Enrique by the arm, Ross told him to leave the premises and further told him that if he ever returned to the premises, criminal trespass charges would be filed against him.

According to Officer Ross, Enrique was calm and cooperative. He made no threats against anyone. Enrique did say he and his wife were having marital problems, and that all he wanted to do was to speak with her. According to the officer, appellant did not appear to be armed.

8. At 9:20 a.m. on March 20, 1993, Officer Ross saw Enrique again—this time going out a side door near the hospital cafeteria. By that time, the shooting had already occurred.

9. Excerpts from the depositions of the father, mother, and sister of Blanca reveal they knew Enrique hit Blanca and beat her up. The family members called police only once about the beatings when the family members feared for the children's safety. No charges were ever filed by Blanca. Nothing in the deposition excerpts indicates that MMC was ever informed of the beatings.

10. In his affidavit, Michael Taylor, Director of Human Resources for MMC, states that Blanca never informed him or, to his knowledge any other agent of MMC that Enrique had threatened her or attempted to cause her serious bodily injury while at MMC or elsewhere. Attached to his affidavit are (a) all Lufkin Police Department (LPD) reports documenting instances of threatened physical violence and (b) all LPD reports documenting acts of actual physical violence from March 1991 to March 1993 at MMC. These are also attached to the affidavit of Keith Lewing, custodian of records for LPD.

Concerning threats of physical violence, Taylor states his investigation reveals that none of the documented threats in the LPD reports were carried out or even attempted to be carried out on the premises of MMC. As to the LPD reports documenting physical violence, only two concern instances of a person's physical attack on another while on MMC premises. In one instance, one visitor was assaulted by another visitor in a patient's room. In the other, a patient in the psychiatric ward of MMC assaulted two female nurses by striking them on the arm. In neither instance was a deadly weapon used; there were no serious injuries inflicted.

11. According to the affidavit of Edd Terrell, chief of security at MMC, Blanca never informed him or any other agent of MMC that her husband had threatened or attempted to cause her serious bodily injury while at MMC or elsewhere. Attached to Terrell's affidavit are MMC's incident reports from January 1992 through March 1993. The vast majority of documented incidents involve patients' refusal of treatment, patients' arguments with doctors and nurses, bereaved family members confronting medical personnel, vagrants entering the hospital to find shelter or food, and miscellaneous petty thefts. Terrell states that, although the incident reports record various occurrences of harassment and threats, none of the incidents resulted in actual violence. The MMC incident reports show no occurrence of vio-

lent crimes committed at MMC other than those contained in the LPD reports noted above.

### APPELLANT'S SUMMARY JUDGMENT EVIDENCE

In attempting to raise a fact issue regarding appellee's foreseeability of the violent crime against Blanca Moyeda, appellant attached as summary judgment proof excerpts from the depositions of MMC security officers Robert Pederzani and Laverne Bernard Ross; the affidavit of appellant's expert, Norman Bottom, Ph.D.; affidavit of Jerome Darks, security guard at MMC; certain offense incident reports from MMC; and a page of the security officers' daily log for March 19 and 20, 1993. By written motion, appellee objected to the affidavit of expert Norman Bottom and the affidavit of security guard, Jerome Darks. The trial court's order regarding Norman Bottom's affidavit effectively eliminated its contents from consideration as summary judgment proof.

1. In the deposition excerpt of Officer Pederzani, the officer indicated he knew Enrique had been on the premises on March 19, 1993, and that Enrique had been involved in a disturbance with Blanca in the stairwell. Pederzani did not know security officers Ross and Darks had sent Enrique off the premises after the incident on March 19. All Pederzani knew was that Enrique ran from him [when Pederzani and Ross met Blanca in the parking lot] the morning of March 20.

2. Pederzani testified that Jerome Darks, security guard, told Pederzani that Blanca was crouched and crying.

3. Pederzani stated that a person is trespassing if that person is not there for any hospital approved purpose, i.e., treatment or visitation of patients.

4. Pederzani stated there should be a heightened sense of security when the security department knows there is a trespasser in a domestic situation coming on the property repeatedly.

5. In his affidavit, Officer Jerome Darks stated he told Enrique on March 19 to leave the hospital property or be arrested. Darks said he also told Enrique if he (Enrique) returned, he would be arrested.

6. Officer Ross also stated he asked Enrique to leave the hospital premises on March 19 after the stairwell incident.

7. Officer Darks further stated in his affidavit that if Enrique came back on the property, "he should have been arrested." "If he was unable to be arrested, the police should have at least been called. If he was seen on the property the next morning [i.e., March 20], the police should have been called."

8. Darks stated in his affidavit, "It was clear that Mr. Moyeda was a threat, and I knew it. I just never saw Enrique Moyeda again. Whoever did see him should have had him arrested and this killing would not have happened."

9. The daily log, attached to appellant's response to the motion for summary judgment, has the following entry by Officer Ross during the first shift on March 20, 1993, time 0650: "Employee's husband (separated) on property stalking wife[.] Pederzanie assisted in search of Hospital U.T.L. Pederzanie work ½ hr over."

10. On March 20, Ross again told Enrique to leave the premises when Ross saw him by the hospital elevators. According to Ross, Enrique told him he (Enrique) wanted to talk with Enrique's wife Blanca, because they were "having difficulty." Ross told Enrique he would have to do it off hospital premises.

11. Ross further stated that, as of March 1993, there was a need at the hospital for security relating to domestic disputes. Because of his years of training and experience on the job, he knew domestic disputes can result in violence.

12. In response to a hypothetical question, Ross agreed that if someone were stalking his wife, it is reasonable to believe there is a potential for violence.

In reviewing the summary judgment evidence, we conclude that, as to general foreseeability, MMC did not know and did not have reason to know from *past* experience of a likelihood of conduct on the part of third persons in general which would endanger the safety of invitees. The police reports, as well as the hospital incident reports, contain almost no instances of violent crime, certainly no murders or no shootings on hospital premises.

In considering whether appellant raises a fact issue as to MMC's specific foreseeability of the violent crime of Enrique Moyeda against Blanca Moyeda, we reach the same conclusion. MMC did not know and had no reason to know that Enrique Moyeda had been physically abusing Blanca and was about to murder her. The summary judgment proof offered by MMC establishes that, although the hospital, through its agent Ms. Sparks, had overheard accounts from Blanca's co-workers of Enrique's verbal abuse toward Blanca, the hospital and its agents had no knowledge of any physical abuse whatsoever. According to the affidavits of Taylor and Terrell, Blanca had never informed them or, to their knowledge, any agent of the hospital of any threats by Enrique against Blanca or any attempts by him to cause her serious bodily injury. The stairwell incident on March 19 involved no striking of Blanca by Enrique. Sparks indicated Blanca told her Enrique took her by the arm and tried to get her to leave the hospital with him. Although they argued, Blanca was not physically harmed, and there was no indication that Enrique threatened her with serious bodily harm either at the hospital or elsewhere.

After the stairwell incident, Officer Ross, in his investigation of the matter, approached Enrique who, according to the officer's affidavit, cooperated with the officer's request to leave the premises. There was no indication on March 19 that Enrique intended to harm Blanca or anyone else.

On March 20, Enrique's conduct likewise gave no indication that he intended to harm Blanca. When Officer Ross approached Enrique at 9:00 a.m. by the hospital elevators, Ross asked him to leave; Enrique did so.

Enrique made no threats against Blanca and did not threaten the officer. According to Officer Ross, Enrique remained calm and cooperative and agreed to leave peacefully. Enrique told Officer Ross that he (Enrique) just wanted to talk to his wife, because they were having marital problems. There is nothing in Enrique's conduct that provided a reasonable basis for MMC to foresee his violent criminal act against Blanca.

Likewise, there is nothing in Blanca's conduct that would cause Enrique's violent act to be foreseeable by MMC. She never reported to MMC, or in any way let MMC know that Enrique was threatening, physically abusing, or seeking to harm her. Even when she telephoned Ms. Sparks and requested Sparks to meet her in the hospital parking lot on the morning of March 20, Blanca did not voice any fear of physical violence against her by Enrique. She simply told Sparks and the officers who met her that day she did not wish to speak with Enrique.

According to affidavits from MMC's employees, the hospital had no knowledge of Enrique's physical abuse of Blanca. Appellant presents no summary judgment evidence to controvert those assertions. The summary judgment evidence establishes MMC did not know and had no reason to know that Enrique Moyeda had been physically abusing his wife and that he was about to commit further physical violence against her. The criminal conduct of Enrique Moyeda was not specifically foreseeable by MMC.

Since we find Enrique Moyeda's criminal act was not foreseeable, there was no duty on the part of MMC to control his actions and to protect Blanca Moyeda from him. Having negated one element of appellant's cause of action, appellee is entitled to summary judgment. We affirm the summary judgment.

AFFIRMED.

BURGESS, Justice, dissenting.

I respectfully dissent. The majority quite correctly points out that we must indulge every reasonable inference in the non-movant's favor, and that "[f]oreseeability requires only that the general danger, not the exact sequence of events that produced the

harm, be foreseeable." My colleagues and I only disagree as to the reasonable inferences to be drawn from the following evidence:

1. Ms. Sparks testimony that she requested the MMC security guards to escort Blanca into work the morning of March 20.

2. Officer Pederzani's testimony that Enrique ran from the officers that morning.

3. Officer's Pederzani's testimony that there should be a heightened sense of security when the security department knows there is a trespasser in a domestic situation coming on the property repeatedly.

4. Officer Darks' testimony that if Enrique was seen on the property the morning of March 20, the police should have been called and whoever saw him that morning should have had him arrested.

5. Officer Ross' entry into the daily log that Enrique was "stalking" Blanca.

The majority states "MMC did not know and did not have reason to know from *past* experience of a likelihood" that Enrique would endanger the safety of others or would commit a violent crime against Blanca. This may be true if the *past* does not include the morning of March 20. I believe the evidence noted above raises a fact issue concerning foreseeability, whether MMC may have assumed a duty to protect Blanca, whether the acts or omissions of MMC were negligence and whether that negligence was a proximate cause of Blanca's death. Consequently, I would reverse the summary judgment and remand for a trial.