859 P.2d 491

**Kenneth RUMMEL, Plaintiff-Appellant and Cross–Appellee,**

v.

**EDGEMONT REALTY PARTNERS, LTD., a Foreign Limited Partnership, Defendant–Appellee and Cross–Appellant.**

**No. 13227.**

Court of Appeals of New Mexico.

July 9, 1993.

Certiorari Denied Aug. 19, 1993.

Randi McGinn, Albuquerque, for plaintiff-appellant, cross-appellee.

Victor R. Marshall and Alexis H. Johnson, Victor R. Marshall & Associates, P.C., Albuquerque, for defendant-appellee, cross-appellant.

## OPINION

DONNELLY, Judge.

Plaintiff, Kenneth Rummel, and Defendant, Edgemont Realty Partners, Ltd. (Edgemont), each appeal from separate orders entered by the trial court. Plaintiff appeals from the trial court's order granting a motion to dismiss in favor of Edgemont. Edgemont pursues a cross-appeal from the trial court's order awarding Plaintiff attorney's fees incurred in seeking and obtaining a default judgment that was later set aside and in opposing Edgemont's motion to set aside the default judgment. The central issue involved in Plaintiff's appeal is whether the allegations contained in his first amended complaint were sufficient to withstand Edgemont's motion to dismiss under SCRA 1986, 1–012(B)(6) (Repl.1992). The cross-appeal challenges the propriety of the trial court's order awarding Plaintiff attorney's fees for seeking the default judgment and then for defending against Edgemont's motion to vacate it. We affirm the order granting the motion to dismiss and the order awarding attorney's fees to Plaintiff.

### FACTS

The events giving rise to this action arose out of an incident at a Circle K convenience store in Albuquerque. On May 6, 1987, Plaintiff, a store employee, while working alone on the night shift, confronted three males who he suspected of shoplifting. The unknown individuals physically attacked and injured Plaintiff while he was attempting to summon the police. Plaintiff alleged that he suffered severe permanent injuries as a result of the attack.

Plaintiff's initial complaint named only Circle K as a defendant and sought damages resulting from personal injuries alleged to have been sustained by him as a result of Circle K's negligent failure to provide adequate security for its store employees. After initiation of discovery proceedings, Plaintiff was granted leave to file a first amended complaint naming "Edgemont Properties & Realty" as an additional defendant. The first amended complaint alleged, among other things, that Edgemont Properties & Realty owned the land and building which housed the Circle K store wherein Plaintiff was employed; that Circle K leased the premises from Edgemont Properties & Realty; that Circle K and Edgemont Properties & Realty failed to provide a "security guard [or] an adequate security system at the contract store to protect ... employees"; that Circle K and Edgemont Properties & Realty knew or should have known that the store premises were unreasonably dangerous; and that they "had a duty to provide adequate security devices or warnings on the premises to protect the individuals who worked there."

Plaintiff's first amended complaint additionally alleged that Circle K and Edgemont Properties & Realty's acts and omissions which resulted in his injuries were due to the negligence of Defendants, or were carried out "intentionally, or with reckless disregard of plaintiff's safety"; that Defendants breached a duty to implement reasonable security measures; and that Plaintiff's injuries were reasonably foreseeable. The first amended complaint also contained a second claim, which alleged that the failure of Defendants to implement appropriate safety procedures led to the injuries sustained by Plaintiff and constituted outrageous conduct.

Shortly after Plaintiff filed his first amended complaint, Circle K filed for bank-

ruptcy. Proceedings as to Circle K were then stayed. Edgemont, acting under the belief that Circle K was handling its defense, failed to answer the amended complaint. A default judgment was entered against it on October 15, 1990. Edgemont then moved to set aside the judgment, alleging that Circle K was contractually obligated to defend it and had failed to take appropriate action. It also alleged, among other things, that the real owner of the property in question was "Edgemont Realty Partners, Ltd.," a limited partnership, and that Plaintiff had mistakenly sued the corporation, rather than the partnership. Edgemont filed a motion and second supplemental motion requesting the trial court to set aside the default judgment.

The trial court granted the motion to set aside the judgment, but awarded Plaintiff attorney's fees and costs incurred incident to securing the default judgment and opposing the motion to vacate the judgment. The order setting aside the default judgment also stated that the first amended complaint could "be amended by interlineation to insert Edgemont Realty Partners, Ltd. in place of Edgemont Properties & Realty, as the party defendant," and that the "amendment shall relate back to the date of filing the First Amended Complaint."

Following the granting of its motion to set aside the default judgment, Edgemont moved to dismiss the amended complaint for failure to state a claim upon which relief could be granted pursuant to SCRA 1–012(B)(6). Edgemont argued that under its lease back arrangement it did not retain control of the premises where Plaintiff was assaulted and that it had no legal duty to protect Plaintiff from criminal attack by unknown third parties. The trial court granted the motion to dismiss. Plaintiff appeals from that ruling. The trial court's order of dismissal did not apply to Circle K. Edgemont filed a cross-appeal from the order awarding Plaintiff his attorney's fees and costs incurred incident to obtaining the default judgment and resisting Edgemont's motion to set it aside.

## DISMISSAL OF PLAINTIFF'S COMPLAINT

### Standard of Review

■ We first consider the applicable standard of review of the trial court's granting of Edgemont's motion to dismiss Plaintiff's first amended complaint. Although the record reflects that Edgemont filed several affidavits incident to its motion to set aside the default judgment, we are satisfied from reviewing the order of dismissal and the matters presented at the hearing on the motion to dismiss that the trial court based its dismissal on the matters alleged in the first amended complaint, and not upon matters outside of the pleadings. *See* SCRA 1–012(B)(6); *cf. DiMatteo v. County of Dona Ana,* 109 N.M. 374, 378, 785 P.2d 285, 289 (Ct.App.1989) (where court in ruling upon motion to dismiss considers matters outside the pleadings, order is reviewed as an order granting summary judgment).

A motion to dismiss pursuant to SCRA 1–012(B)(6) tests the legal sufficiency of the complaint. *New Mexico Life Ins. Guar. Ass'n v. Quinn & Co.,* 111 N.M. 750, 753, 809 P.2d 1278, 1281 (1991). In reviewing an order granting a motion to dismiss, we accept as true all facts properly pleaded. *Id.* A complaint is subject to dismissal under SCRA 1–012(B)(6) only if under no state of facts provable thereunder would a plaintiff be entitled to relief. Dismissal under the rule is a drastic remedy and is infrequently granted. *McCasland v. Prather,* 92 N.M. 192, 194, 585 P.2d 336, 338 (Ct.App.1978). Under this standard of review only the law applicable to such claim is tested, not the facts which support it. *Environmental Improvement Div. v. Aguayo,* 99 N.M. 497, 499, 660 P.2d 587, 589 (1983).

### Sufficiency of the Complaint

■ Plaintiff argues that the trial court erred in determining that its first amended complaint failed to allege viable negligence claims against Edgemont.

In resolving this issue, we examine the allegations contained in Plaintiff's first amended complaint in light of the standard

discussed above. In order for Plaintiff's first amended complaint to withstand Edgemont's motion to dismiss, he is required to show the existence of a duty, Edgemont's negligent breach of its duty, and that Edgemont's negligence proximately resulted in injuries to Plaintiff. *State Farm Mut. Auto. Ins. Co. v. Maidment*, 107 N.M. 568, 572, 761 P.2d 446, 450 (Ct. App.), *cert. denied*, 107 N.M. 413, 759 P.2d 200 (1988). Determination of whether Edgemont owed a duty to Plaintiff is a question of law to be decided by the court. *See Klopp v. Wackenhut Corp.*, 113 N.M. 153, 159, 824 P.2d 293, 299 (1992); *Calkins v. Cox Estates*, 110 N.M. 59, 62, 792 P.2d 36, 39 (1990).

The general issue we must address is whether Plaintiff has sufficiently alleged that Edgemont was in possession of the premises or that it retained control over the store building where the attack occurred. *See Calkins*, 110 N.M. at 63, 792 P.2d at 40 (landlord under no affirmative duty to inspect or maintain areas where control has been relinquished, but is responsible for maintaining in reasonably safe condition areas reserved for common use of tenants); *see also Mitchell v. C & H Transp. Co.*, 90 N.M. 471, 474, 565 P.2d 342, 345 (1977) (recognizing general rule that landlord out of possession and retaining no control or right of control over premises not liable for defects not caused by him); *Bovis v. 7-Eleven, Inc.*, 505 So.2d 661, 664 (Fla.Dist. Ct.App.1987) (lessor's liability, if any, is not based on ownership but on right of possession or control); *Lay v. Dworman*, 732 P.2d 455, 458 (Okla.1986) (recognizing duty of landlord to use ordinary care to maintain in safe condition common portions of leased premises over which it has retained control). Thus, the narrow legal question presented here is whether a nonpossessory landowner owes a duty of care to protect an employee of Circle K from the criminal acts of a third party. In determining this question, we utilize the following definition of possession, as defined by Restatement (Second) of Torts Section 328 E, at 170 (1965) [hereinafter Restatement]:

A possessor of land is:

(a) a person who is in occupation of the land with intent to control it[,] or

(b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or

(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b).

As a general rule, absent a showing that a party has a special relationship with another, the party has no duty to protect the other from harm caused by criminal acts of third persons. *See* Restatement, *supra*, § 315; *see also Kline v. 1500 Massachusetts Ave. Apartment Corp.*, 439 F.2d 477, 481 (D.C.Cir.1970); *Peterson v. San Francisco Community College Dist.*, 36 Cal.3d 799, 205 Cal.Rptr. 842, 845, 685 P.2d 1193, 1196 (Cal.1984) (en banc); *Williams v. Cunningham Drug Stores, Inc.*, 429 Mich. 495, 418 N.W.2d 381, 383 (1988); *Lay*, 732 P.2d at 457; *see generally* E.L. Kellett, Annotation, *Comment Note.—Private Person's Duty and Liability For Failure to Protect Another Against Criminal Attack by Third Person*, 10 A.L.R.3d 619 (1966). Exceptions to the general rule have been recognized, however, where a special relationship is shown to exist, giving rise to a duty of a landowner in possession or a business occupant to protect against a third person's criminal conduct. *See* Restatement, *supra*, § 315; *see also Peterson*, 205 Cal.Rptr. at 846, 685 P.2d at 1197; *Leger v. Stockton Unified Sch. Dist.*, 202 Cal.App.3d 1448, 249 Cal.Rptr. 688, 693 (1988); *Fortney v. Hotel Rancroft*, 5 Ill.App.2d 327, 125 N.E.2d 544, 546 (1955).

Within the ambit of commonly recognized special exceptions to the general rule noted above are cases recognizing a duty on the part of innkeepers to their guests, *Fortney*, 125 N.E.2d at 546, business establishments toward their customers, *Williams*, 418 N.W.2d at 383, and, under certain situations, landlords toward their tenants, *Kline*, 439 F.2d at 481; *Lay*, 732 P.2d at 457. *See also* Restatement, *supra*, § 314A; *see generally* Michael J. Bazyler,

*The Duty to Provide Adequate Protection: Landowners' Liability For Failure to Protect Patrons From Criminal Attack,* 21 Ariz.L.Rev. 727 (1979); W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* ch. 9, § 56, at 383 (5th ed. 1984); Joseph A. Page, *The Law of Premises Liability* § 11.3, at 293–95 (2d ed. 1988).

Courts in other states that have considered analogous situations to that posed here have held that a lessor who has surrendered possession or has retained only the right to approve modifications made to the premises by a lessee is not liable to a lessee or its employees for acts of third parties. *See Leakes v. Shamoun,* 187 Cal. App.3d 772, 232 Cal.Rptr. 171, 172, 174 (1986) (nonpossessory landlord with no immediate control over premises owed no duty to injured pedestrian); *Craig v. A.A.R. Realty Corp.,* 576 A.2d 688, 694–97 (Del.Super.Ct.1989) (no duty on part of lessor who has surrendered possession of premises to protect business invitee of lessee from criminal attack); *see also* NMSA 1978, § 47–8–20(A)(3) (Cum.Supp.1992); *Torres v. Piggly Wiggly Shop Rite Foods, Inc.,* 93 N.M. 408, 410, 600 P.2d 1198, 1200 (Ct.App.) (landlord who has fully parted with possession of premises and retains no right of control is not chargeable with defects not caused by him), *cert. denied,* 93 N.M. 683, 604 P.2d 821 (1979). In this connection, none of the cases Plaintiff relies on has involved landowners who have so completely parted with possession and control. *See, e.g., Jardel Co. v. Hughes,* 523 A.2d 518 (Del.1987). Indeed, *Jardel* was expressly distinguished on this ground in *Craig.*

Plaintiff's first amended complaint alleged that "[t]he Circle K corporation was responsible for supervising and creating and enforcing policies and procedures for security, employment conditions and employee protection." The complaint also alleged that Edgemont "owned the land and property housing the Circle K Contract Store"; that "Circle K, Inc. or Edgemont ... designed the layout, and phone placement in the store"; and that the "contract store manager could make no changes in the fixtures or layout without the express approval of the defendants." The complaint, however, does not allege that Edgemont retained possession over any part of the premises, or that it refused a request of the lessee for permission to install additional telephones or security devices. Although the allegations set forth in the first amended complaint provide some indication of Edgemont's retention of the right to authorize or approve changes in the store premises, absent an allegation that Edgemont rejected or refused to authorize the installation of reasonable security features on the premises, that Edgemont had possession of the premises where Plaintiff was assaulted, or that Edgemont retained control over all or a portion of the premises so as to give rise to the existence of a special relationship and duty on the part of Edgemont toward Plaintiff, we conclude that the trial court properly granted the motion to dismiss. The allegations set forth in the amended complaint do not sufficiently allege the type of possession or control that give rise to a duty on the part of Edgemont.

Plaintiff contends that the case should not have been dismissed on the pleadings because Edgemont exercised control of the premises prior to leasing the store to Circle K. Plaintiff's theory appears to be that Edgemont, as owner, is liable for delivering dangerous premises to its lessee. *See Bovis,* 505 So.2d at 664. We disagree because the complaint contains no such allegation. Moreover, the documents submitted to the trial court in connection with the motion to set aside the default indicate that Edgemont never had possession of the premises and had merely purchased this Circle K store, along with some others, and immediately leased them back to Circle K; the transaction was in the nature of a financing arrangement. Thus, for the reasons discussed herein, we conclude that Plaintiff has failed to allege matters giving rise to a duty on the part of Edgemont toward Plaintiff.

■ Plaintiff also sought to recover damages from Circle K and Edgemont, alleging that their acts and omissions in fail-

ing to provide adequate security on the store premises constituted outrageous conduct. In *Hakkila v. Hakkila*, 112 N.M. 172, 175, 812 P.2d 1320, 1323 (Ct.App.), *cert. denied*, 112 N.M. 77, 811 P.2d 575 (1991), this Court discussed the tort of outrageous conduct, or intentional infliction of emotional distress, as recognized in *Ramirez v. Armstrong*, 100 N.M. 538, 540, 673 P.2d 822, 824 (1983), and in Restatement, *supra*, Section 46. A party may be deemed to have committed such tort where he or she "by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another," and if bodily harm results therefrom. Restatement, *supra*, Section 46.

In order for Plaintiff to recover for outrageous conduct against Edgemont, he must show that the intentional or reckless acts or omissions of the partnership caused emotional distress to him by reason of Edgemont's "extreme and outrageous conduct." *Id.* Restatement, *supra*, Section 46, Comment d is instructive as to the showing required to establish such tort. The comment provides in part:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Similarly, in *Sanders v. Lutz*, 109 N.M. 193, 784 P.2d 12 (1989), our Supreme Court characterized the "extreme and outrageous conduct" required to prove such tort as including conduct which is " 'beyond all possible bounds of decency, and [which is] regarded as atrocious, and utterly intolerable [in] a civilized community.' " *Id.* at 196, 784 P.2d at 15 (quoting *Mantz v. Follingstad*, 84 N.M. 473, 480, 505 P.2d 68, 75 (Ct.App.1972)).

Absent any showing that a special relationship existed between Edgemont and Plaintiff giving rise to a legal duty by Edgemont to protect Plaintiff from the criminal acts of third parties, we conclude that the trial court properly determined that the amended complaint failed to properly assert a claim of "extreme and outrageous conduct."

## AWARD OF COSTS AND ATTORNEY'S FEES

Lastly, we address Edgemont's cross-appeal which argues that the trial court erred in granting Plaintiff's motion for attorney's fees and costs incurred by reason of his obtaining a default judgment and his resistance to Edgemont's motion to set it aside. We find Edgemont's challenge to the award of attorney's fees unpersuasive.

SCRA 1986, 1–055(C) (Repl.1992) provides that "[f]or good cause shown," a default judgment may be set aside pursuant to the provisions of SCRA 1986, 1–060(B) (Repl.1992). The latter rule states that a court may provide relief from a judgment "upon such terms as are just." The decision of a trial court imposing conditions incident to granting relief under SCRA 1–060(B) will be set aside for an abuse of discretion where the decision is arbitrary or unreasonable. *See Kutz v. Independent Publishing Co.*, 101 N.M. 587, 589–90, 686 P.2d 277, 279–80 (Ct.App. 1984).

In *Kutz*, this Court recognized that the trial court is invested with "broad discretion" in determining conditions to be imposed upon a party requesting that a judgment be vacated, and that such conditions may include a provision directing that the granting of such motion may be conditioned upon the moving party paying costs and attorney's fees. *Id.; see also Chase v. Contractors' Equip. & Supply Co.*, 100 N.M. 39, 47, 665 P.2d 301, 309 (Ct.App.) (authorizing award of attorney's fees), *cert. denied*, 99 N.M. 740, 663 P.2d 1197 (1983); *Graves v. P.J. Taggares Co.*, 94 Wash.2d 298, 616 P.2d 1223, 1228 (1980) (en banc) (as condition of vacating default judgment, court may require moving party to pay the plaintiff's added expenses and attorney's fees); *see generally* C.T. Drechsler, Annotation, *Conditioning the Setting Aside of Judgment or Grant of New Trial on Payment of Opposing Attorney's Fees*, 21 A.L.R.2d 863 (1952).

Edgemont contends that the trial court abused its discretion because Plaintiff's counsel did not contact Edgemont's counsel prior to seeking the default judgment. Essentially, Edgemont's complaint is that this Court would be encouraging sloppy practice and ambush tactics to allow the recovery of attorney's fees under the circumstances here. We disagree. Notice is required only when a party has appeared in the action. *Rodriguez v. Conant*, 105 N.M. 746, 748, 737 P.2d 527, 529 (1987). Edgemont did not appear, and therefore Plaintiff was entitled to the default judgment without contacting Edgemont's counsel. While the absence of contact could have been a reason for the trial court to have denied a request for attorney's fees in the exercise of its discretion, we cannot say that the trial court acted beyond the bounds of all reason in allowing attorney's fees as a condition of setting aside the default judgment that was properly granted. *See In re Estate of Greig*, 107 N.M. 227, 230, 755 P.2d 71, 74 (Ct.App.1988) (abuse of discretion is a decision that is beyond the bounds of all reason).

Plaintiff requests attorney's fees and costs in connection with defending the cross-appeal. Inasmuch as Plaintiff's costs were incurred in connection with the appeal on which Plaintiff did not prevail, Plaintiff is not entitled to costs. *See* SCRA 1986, 12–403(A) (Repl.1992). An award of appellate attorney's fees must be authorized by law. *Albner v. Nolle*, 98 N.M. 100, 108, 645 P.2d 456, 464 (Ct.App.1982). Plaintiff has cited no authority allowing the award of appellate attorney's fees under the circumstances of this case, and therefore we deny the request.

## CONCLUSION

We affirm the decision of the trial court to grant the motion to dismiss and the order awarding attorney's fees and costs.

**IT IS SO ORDERED.**

BIVINS and PICKARD, JJ., concur.