Lois Ann KRIER, as Personal Representative of the Estate of Daryl Dean Krier, Deceased, and for Lois Ann Krier, Timothy Krier, and Bonnie Douglas, Appellants (Plaintiffs),

v.

SAFEWAY STORES 46, INC.; Rodney Rusk; and Maurice W. Brown, Appellees (Defendants).

No. 96–32.

Supreme Court of Wyoming.

July 31, 1997.

Philip A. Nicholas; Stephen N. Goodrich; and Steven K. Sharpe, Nicholas Law Offices, L.L.C., Laramie, for Appellants.

John A. Sundahl and Kay Lynn Bestol, Sundahl, Powers, Kapp & Martin, Cheyenne, for Appellees Safeway Stores 46, Inc. and Rodney Rusk.

Thomas G. Gorman and Dale W. Cottam of Hirst & Applegate, P.C., Cheyenne, for Appellee Maurice W. Brown.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

TAYLOR, Chief Justice.

The primary issue on review is whether, under the circumstances before us, a landlord or tenant owes a duty to protect persons on the property from criminal acts of third parties. In the early morning hours on November 25, 1992, Daryl Dean Krier (Krier), an employee at the Town and Country Safeway store in Cheyenne, Wyoming, was stabbed and killed by a burglar who had entered the store to steal cigarettes. Lois Ann Krier, as personal representative of Krier's estate, filed negligence claims against the premises lessee Safeway Stores 46, Inc. and the store manager Rodney Rusk, among others, also alleging that the owner and landlord of the premises, Maurice W. Brown, failed to maintain the premises in a reasonably safe condition. The district court granted summary judgment in favor of all defendants, holding that plaintiffs failed to

establish a duty to protect Krier against criminal acts of a third person.

We affirm.

## I. ISSUES

Appellants, Lois Ann Krier, as personal representative of the Estate of Daryl Dean Krier, and for Lois Ann Krier, Timothy Krier and Bonnie Douglas (appellants), present the following issues for review:

1. Whether the District Court erred in granting summary judgment in favor of the owner of the building for claims arising out of the death of Dean Krier.

 a. Does a landlord owe a duty to business invitees or visitors to maintain premises leased to others in a reasonably safe condition when the premises are open to the public and the landlord retained joint control over common areas and the roof?

 b. Is there a genuine issue of material fact with respect to whether the landlord was negligent in failing to remove a ladder like antenna or in failing to cover or install bars across a roof opening?

2. Whether the District Court erred in granting summary judgment in favor of the store manager for claims arising out of the death of Dean Krier. Is there a genuine issue of material fact with respect to whether the store manager was culpably negligent?

3. Whether the District Court erred in granting summary judgment in favor of the lessee of the building for claims arising out of the death of Dean Krier.

 a. Does a lessee owe a duty to business invitees or visitors to maintain premises leased by it in a reasonably safe condition?

 b. Is there a genuine issue of material fact with respect to whether the lessee was negligent in failing to remove a ladder like antenna adjacent to the building, failing to either cover or install bars across a roof opening, or in failing to install a burglar alarm?

Appellees, leaseholder Safeway Stores 46, Inc. (Safeway 46) and store manager Rodney Rusk (Rusk), respond with two issues:

1. Did the district court err in granting summary judgment in favor of co-employee Rod Rusk, when the Plaintiff was unable to present evidence that Rusk had intentionally committed an unreasonable act with a state of mind approaching intent to do harm in disregard of a known or obvious risk that was so great as to make it highly probable the harm would follow?

2. Did the district court err in granting summary judgment in favor of Safeway Stores 46, Inc., when the Plaintiff was unable to present any evidence that Safeway 46, a subsidiary of the employer, exerted any control over the premises or the operation of the store?

Appellee, landlord Maurice W. Brown (Brown), offers the following issue:

Did the District Court err when it granted Summary Judgment in favor of Appellee Maurice W. Brown on the grounds that under Wyoming law, Appellee Brown had no duty to protect the Appellant's decedent from a criminal attack where (1) no special relationship existed between Appellee Brown and the Appellant's decedent, and (2) the murder of the Appellant's decedent was not foreseeable to Appellee Brown?

## II. FACTS

Krier was stabbed to death shortly after commencing daily opening preparations at the Safeway grocery store located at the Town and Country Shopping Center just outside the city limits of Cheyenne, Wyoming. Although scheduled to arrive with another employee, Krier went into the store alone when his co-employee failed to report to work on time. After clocking in at the rear of the store, he encountered a burglar, Charles Ross (Ross), who stabbed Krier and fled the building. By the time Krier was discovered, he had died from the wounds inflicted by Ross.

The Town and Country Safeway store is the largest of several connected stores in the shopping center. Ross gained entry to the Town and Country Safeway store by climb-

ing an antenna on the north side of the store, and once on the roof, cutting a hole in a fiberglass skylight panel to lower himself inside. In an affidavit submitted by appellants, Ross stated that this was the second time he had climbed onto the roof using the antenna, which he described as having "rungs like a ladder that make climbing easy." Ross also stated that prior to entering the building, he had "cased out" the store, checking for any indication that it was protected by a burglar alarm system.

Appellants filed suit against numerous defendants, including Safeway 46, store manager Rusk, and the owner of the premises, Brown. Appellants claimed that despite Safeway 46's and Brown's knowledge that the presence of the antenna and the vulnerable condition of the skylight created a foreseeable danger from criminal actions of third parties, they did nothing to alleviate the danger. Appellants' claims against Krier's co-employee Rusk centered on allegations that Rusk was culpably negligent in failing to ensure that more than one person was present during the opening and closing of the store. The facts relating to the individual appellees will be presented in greater detail in the discussion portion of this opinion.

Each appellee filed a motion for summary judgment which appellants opposed. After lengthy briefing, the submission of substantial supporting material, and oral argument, the district court issued its decision letter granting summary judgment in favor of all appellees on November 29, 1995. An order granting summary judgment was entered on December 14, 1995, and this appeal followed.

## III. STANDARD OF REVIEW

■ Summary judgment is appropriate only when a review of the record in the light most favorable to the non-moving party reveals no triable issues of material fact and judgment is warranted as a matter of law. *Smith v. Throckmartin*, 893 P.2d 712, 714 (Wyo.1995) (*quoting Baros v. Wells*, 780 P.2d 341, 342 (Wyo.1989)). In determining whether summary judgment is proper, the non-moving party is entitled to have the evidence and all reasonable inferences accepted as true. *Smith*, 893 P.2d at 714. On appeal, this court is required to review the record *de novo* to determine whether the trial court erred in concluding that an absence of genuine issues of material fact justified summary judgment. *Id.*

## IV. DISCUSSION

■ Although summary judgment is not favored in negligence actions, it is appropriate when the plaintiff is unable to establish the existence of a duty on the part of a defendant. *Newberry v. Board of County Com'rs of Fremont County*, 919 P.2d 141, 144 (Wyo.1996) (*quoting Duncan v. Town of Jackson*, 903 P.2d 548, 550–51 (Wyo.1995)); *Ortega v. Flaim*, 902 P.2d 199, 204 (Wyo. 1995). In this case, the district court determined that as a matter of law, appellants failed to establish that Brown or Safeway 46 owed a duty to protect Krier from Ross' criminal acts.

### A. SAFEWAY 46

Safeway 46 is a corporation created as a result of the leveraged buy-out of the old Safeway corporation in 1986. While the original Safeway corporate structure conducted its entire operation essentially through one company, the new corporate structure created first, second and third tier subsidiaries organized generally along national, regional, and local geographic areas. The separation of the old Safeway into subsidiaries was to enable the sale of individual subsidiaries, if necessary, and to limit certain types of liability. Thus, the old Safeway corporation was transformed into many corporations, including the new parent corporation, Safeway, Inc. (new Safeway) and its third tier subsidiary, Safeway 46.

On November 26, 1986, the new Safeway entered into an Administrative Services Agreement with Safeway 46 which provides, in relevant part:

> E. The Acquisition [of old Safeway] does, however, change the structure of some domestic asset ownership and operations in the New Safeway Group as compared with the pre-Acquisition Old Safeway Group organization. * * * The assets and operations of certain of the Old Safe-

way retail divisions have been transferred to groupings of subsidiaries. * * *

F. * * * the parties hereto desire to preserve in the New Safeway Group the centralized administrative and management services as formerly provided by Old Safeway * * *.

* * *

1. * * *

(a) * * *

In consideration of the [services] charge * * * New Safeway hereby agrees to provide to the First Tier, Second Tier and Third Tier subsidiaries various centralized administrative and management services * * *.

Appellants also submitted documentation that the assets and profits for the Town and Country Safeway store were reported to governmental authorities as assets and profits for Safeway 46.

At the culmination of the transfer from the old Safeway to the new Safeway, Safeway 46 was assigned all right, title and interest in the lease agreement between Brown and the old Safeway for the Town and Country Safeway store premises. The assignment from the old Safeway to Safeway 46 provides, in part:

## ASSIGNMENT AND ASSUMPTION

* * *

Assignee [Safeway 46] hereby accepts said assignment and covenants with Assignor [old Safeway] and the lessor [Brown] of said Lease * * * that Assignee * * * hereby assumes and will henceforth perform or cause to be performed all of the obligations of every nature contained in said Lease and Related Agreements * * *.

■ In turn, the lease for the Town and Country Safeway store premises provided that the common areas were for the joint use of all tenants, their customers, invitees and employees. While the lease requires the lessor to maintain the common areas at his own expense and to keep the building structure, including the roof and skylights, in good repair, the lease also permits Safeway 46 to "make such repairs, alterations and improvements to the leased premises" and "install in the leased premises such fixtures and equipment" as Safeway 46 deems desirable.

Appellants argue that this documentation establishes Safeway 46 as the lessee in possession and control of the Town and Country Safeway store premises, creating a non-delegable duty to Krier to maintain the premises in a reasonably safe condition. Appellants contend that Safeway 46 breached its duty by failing to cover or install bars across the skylights, failing to direct that the antenna be removed, and failing to install a burglar alarm. In support of this argument, appellants urge the adoption of Restatement (Second) of Torts § 344 (1965) (Torts § 344), which provides:

Business Premises Open to Public: Acts of Third Persons or Animals

A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

(a) discover that such acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.[1]

1. Comment f:
 *Duty to police premises.* Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though

he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

Thus, under the law proposed by appellants, liability for criminal acts of third persons will be imposed, under limited circumstances, on one who is "a possessor of land." A "possessor of land" is defined in Restatement (Second) of Torts § 328E (1965) as follows:

Possessor of Land Defined

A possessor of land is

(a) a person who is in occupation of the land with intent to control it or

(b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or

(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b).

▮ Although Safeway 46 is named as the tenant on the lease, title ownership of the premises is not the determinative factor in ascertaining whether one is in possession with intent to control the land. *See Fiscus v. Atlantic Richfield,* 773 P.2d 158 (Wyo.1989). Title ownership may be indicative of the right to possession and control, but it is the actual exercise of such rights which is relevant to the determination of liability for criminal acts of third parties. *Hoffnagle v. McDonald's Corp.,* 522 N.W.2d 808, 813, 815 (Iowa 1994); *Little v. Howard Johnson Co.,* 183 Mich.App. 675, 455 N.W.2d 390, 392 (1990) (franchisor not possessor of franchisee's premises); *J.M. v. Shell Oil Co.,* 922 S.W.2d 759, 763 (Mo.1996); *Rummel v. Edgemont Realty Partners, Ltd.,* 116 N.M. 23, 859 P.2d 491, 494 (N.M.App.), *cert. denied,* 115 N.M. 709, 858 P.2d 85 (N.M.1993).

[T]he duty to provide protection arises, under the appropriate circumstances, from the defendant's "power of control or expulsion that his occupation of the premises gives him over the conduct of a third person who may be present." * * * The logical inverse of this reasoning is that, absent a defendant's occupation of a premises, no potential control or ability to oust a third party exists; therefore, the defendant would not be liable for failure to provide

security when he did not control the premises upon which a third party assaulted a plaintiff.

*LaFleur v. Astrodome–Astrohall Stadium Corp.,* 751 S.W.2d 563, 565 (Tex.App.1988) (*quoting Morris v. Barnette,* 553 S.W.2d 648, 649 (Tex.Civ.App.1977)). In *Ortega,* 902 P.2d at 202, we described the common law rationale for imposing premises liability on the tenant, rather than a landlord, as follows:

Tenants' rights were best protected by the common law view that a landlord's lease to a tenant was a conveyance of the premises for the term of the lease. From that view, the tenant was the owner *and occupier* subject to all the responsibilities of *one in possession* and burdened with maintaining the premises in a reasonably safe condition to protect persons who came upon the land.

(Emphasis added and footnote omitted.)

The uncontested facts demonstrate that even were we to adopt the law urged by appellants, Safeway 46 was not "a possessor of land" as envisioned within the parameters of Torts § 344 or Wyoming case law. Safeway 46 has no employees, no bank accounts, and does not pay bills. The new Safeway assumed all responsibility for hiring and maintaining personnel, policies, and security.[2] Rent for the premises was paid on the new Safeway's checks and all communications regarding the condition of the property after the lease assignment were between the new Safeway's employees and Brown. The evidence conclusively established that the new Safeway physically occupied and exercised total control of the premises at all times following the lease assignment. Further, the Administrative Services Agreement does not provide for any control by Safeway 46 over the new Safeway's use of the premises. Therefore, assuming *arguendo* that a duty to protect Krier from third party criminal acts existed, and that such duty was breached, Safeway 46 cannot be held liable for any failure on the part of the new Safeway or Brown to maintain the premises in a safe condition. *Brookins v. United States,* 722 F.Supp. 1214, 1219–20 (E.D.Pa.1989); *John-*

2. The new Safeway, as Krier's employer, is immune from suit in this instance pursuant to the Wyoming Worker's Compensation Act. Wyo. Stat. § 27–14–104 (1997).

*son v. Urena Service Center,* 227 A.D.2d 325, 642 N.Y.S.2d 897, 898–99 (1996).

Neither can liability attach to Safeway 46 on the basis of an "agency" theory. Appellants contend that Safeway 46 "hired" the new Safeway to operate the grocery store on behalf of Safeway 46. In Wyoming, the test for a principal/agent or employer/employee relationship is the principal's right to control the agent or employee. As we stated in *Holliday v. Bannister,* 741 P.2d 89, 95 (Wyo.1987):

> Agency is a fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf ***and*** subject to his control and consent. There is no presumption that an agency exists. *True v. Hi–Plains Elevator Machinery, Inc., Wyo.,* 577 P.2d 991 (1978). In Wyoming, the overriding element in determining whether one is an employee or an independent contractor is dependent on whether the employer has a right to control the details of the work whereby liability is sought to be established. *Noonan v. Texaco, Inc., Wyo.,* 713 P.2d 160 (1986) * * *.

*See also J.M.,* 922 S.W.2d at 764. While the new Safeway clearly acted on behalf of Safeway 46, in that all profits generated by the Town and Country Safeway store were reported as belonging to Safeway 46, appellants presented no evidence that Safeway 46 had a right to control the new Safeway in its daily operations which generated those profits. The Administrative Services Agreement specifically stated that centralized administrative and management services provided by the old Safeway would be preserved in the new Safeway. There is no provision which allows Safeway 46 to monitor or direct the activities of the new Safeway nor is there any evidence that Safeway 46 in fact did so. Consequently, the materials before us fail to establish any factual issue regarding the essential elements of possession and control.

### B. BROWN

Appellants' claim that the district court erred when it found that Brown's duty, as a landlord who retained joint control of the antenna and roof, encompassed only the duty to safely maintain the structural integrity of the areas under his control, not the duty to "police" the premises. In support of their argument, appellants again rely on Torts § 344 cmt. f. Appellants also direct us to Restatement (Second) of Property, Landlord and Tenant § 17.3 (1977) (Landlord and Tenant § 17.3) and case law from other jurisdictions.

In *Lyden v. Winer,* 878 P.2d 516, 518 (Wyo.1994) (*quoting* 49 Am.Jur.2d *Landlord and Tenant* § 805 at 760–61 (1970)), we held that when the landlord retains possession and control of the premises or a portion thereof, it is his duty to " 'exercise reasonable care to keep safe such parts of which he so reserves control * * *'." Appellants assert that Brown breached the duty because the condition of the property was "unsafe" due to the foreseeable risk engendered by the vulnerability of the skylights coupled with a "ladder" to the roof. Landlord and Tenant § 17.3 cmt. l provides:

> Parts of Leased Property Retained in Landlord's Control Which Tenant is Entitled to Use.

> A landlord who leases a part of his property and retains in his own control any other part the tenant is entitled to use as appurtenant to the part leased to him, is subject to liability to his tenant and others lawfully upon the leased property with the consent of the tenant or a subtenant for physical harm caused by a dangerous condition upon that part of the leased property retained in the landlord's control, if the landlord by the exercise of reasonable care could have:

> (1) discovered the condition and the unreasonable risk involved therein; and

> (2) made the condition safe.

> * * *

> *l. Criminal intrusion.* For the purpose of this section, the unreasonable risk of harm from criminal intrusion constitutes a dangerous condition, so that where the landlord could by the exercise of reasonable care have discovered the unreasonable risk of criminal intrusion and could have made the condition safe from such unreasonable risk of criminal intrusion, he is

subject to liability for physical harm caused by criminal intrusion if he has not taken the necessary precautions. As regards parts of the property retained in the landlord's control, common entranceways, fire escapes, halls and other approaches to the leased property are included. In addition, other parts of the property, such as door locks on the entrance to the tenant's apartment or office, may be effectively retained in the landlord's control in the sense that the landlord *is the only one with the authority to make necessary changes in order to avoid unreasonable risk of harm.*

(Emphasis added.)

Again, assuming that the duty imposed by Torts § 344 and the duty found in Landlord and Tenant § 17.3 are adopted as law in Wyoming, appellants fail to raise material facts which encumber Brown with the duty to secure the skylight or remove the antenna.

The essential concept of possession and control found in Torts § 344 is also part and parcel of Landlord and Tenant § 17.3 cmt. a, which provides:

> The rule stated in this section does not apply to any part of the leased property specifically transferred to the tenant under the lease with regard to which the landlord retains a right to inspect, to repair, or to enter for some other purpose. These parts of the leased property are not considered to remain under the landlord's control.

■ Appellants argue that Brown's "joint control" over the roof and skylight is sufficient. We disagree. The lease agreement states, "Lessor agrees to keep *the building structure on the leased premises* (including, without limitation, the roof, * * * skylights * * *) * * * in good repair * * *." (Emphasis added.) This language specifically transfers control of the entire building, including the roof, to the tenant, retaining in the landlord only a duty to repair. The record clearly establishes that Brown provided regular structural maintenance of the roof, but otherwise provided repairs only at the request of the Town and Country Safeway store employees. There is no allegation that Brown refused a request to provide additional security to the roof and skylights. Therefore, Brown did not retain control of the roof for the purposes contemplated by Landlord and Tenant § 17.3.

This leaves the antenna, located in the common areas used for the benefit of the shopping center tenants and their invitees. Appellants contend that Brown knew or should have known that the antenna was an "invitation" to criminal activity and the tragic result to Krier a foreseeable consequence of its presence.

The district court's determination regarding Brown was twofold. First, the district court found that no duty could be imposed upon Brown absent a "special relationship" not found in the landlord/tenant context. The district court further found that the criminal acts of Ross were not foreseeable.

In *Ortega,* 902 P.2d at 202, we stated that Wyoming follows the common law rules in the landlord and tenant relationship. The district court's requirement of a "special relationship" follows the common law rule that persons in possession or control of business premises face no tort liability for on-premises criminal attacks against non-trespassers, even though there exists a duty to protect those appropriately on the premises from unreasonable risks of harm. *McClung v. Delta Square Ltd. Partnership,* 937 S.W.2d 891, 895 (Tenn.1996) and cases cited therein. In support of this rule, some courts reasoned that a criminal act constituted an intervening cause of harm that precluded landowner liability, while others held that such a duty would unfairly burden the landlord. *Cook v. Safeway Stores, Inc.,* 354 A.2d 507, 508 (D.C.App.1976) (not insurer); *Nappier v. Kincade,* 666 S.W.2d 858, 860–61 (Mo.App. 1984) (general); *Goldberg v. Housing Authority of City of Newark,* 38 N.J. 578, 186 A.2d 291, 296 (1962) (fairness—later disavowed in *Butler v. Acme Markets, Inc.,* 89 N.J. 270, 445 A.2d 1141, 1144–45 (1982)); *Davis v. Allied Supermarkets, Inc.,* 547 P.2d 963, 965 (Okla.1976) (not insurer—later distinguished in residential landlord/tenant context in *Lay v. Dworman,* 732 P.2d 455, 460 (Okla.1986)).

However, in *Ortega,* 902 P.2d at 203 (*quoting Newton v. Magill,* 872 P.2d 1213, 1217–18 (Alaska 1994)), we also noted that "[t]he common law 'is but the accumulated expressions of the various judicial tribunals in their efforts to ascertain what is right and just between individuals with respect to private disputes.'" The common law rule precluding the landlord's liability in the absence of a special relationship clearly has undergone a change in recent years, with the vast majority of jurisdictions finding a duty to protect those lawfully on the premises from criminal acts of third parties under limited circumstances.

The evolution of the law in this area begins with the premise that a "relationship" approach is inadequate for the reality of criminal conduct on business premises. However, a duty based solely on the landlord/tenant relationship imposes an undue burden on landlords. On the other hand, if the relationship between a landlord and a business invitee does not impose a duty to protect against criminal acts, landlords have no incentive to implement even modest security measures which would allow easily preventable crimes to occur. *See* Uri Kaufman, *When Crime Pays: Business Landlords' Duty to Protect Customers From Criminal Acts Committed on the Premises,* 31 S.Tex.L.Rev. 89, 94 (1990). The resolution of this problem has not been unanimous.

A small minority of jurisdictions continue to require a special relationship between the parties, such as an innkeeper/guest and common carrier/passenger, to impose a duty to protect from criminal acts of third parties. Because the commercial landlord/business invitee relationship is not included, no duty is imposed unless a specific criminal activity is known to be imminent. *Folmar v. Marriott, Inc.,* 918 P.2d 86, 88 (Okla.App.1996) (rejecting second portion of Torts § 344 cmt. f, duty

to guard arises only when business invitor knows or has reason to know that criminal acts are occurring or are about to occur).[3] Thus, the "special relationship" threshold has been abrogated by all but one or two jurisdictions in favor of an analysis based on the control of the premises and the landlord's superior knowledge of the likelihood of criminal acts. While a relatively large number of decisions have been handed down, there is still much confusion as to when such duty should arise and how far it should reach. *See* 43 A.L.R.5th *Landlord's Liability for Failure to Protect Tenant From Criminal Acts of Third Person,* 207–518 (1996).

Some jurisdictions have expanded the "special relationship" test to include a duty created by "special circumstances" or "special facts exception." *Baptist Memorial Hosp. v. Gosa,* 686 So.2d 1147, 1149 (Ala. 1996); *Broadus v. Chevron USA, Inc.,* 677 So.2d 199, 202 (Ala.1996); *Thiele v. Rieter,* 838 S.W.2d 441, 442 (Mo.App.1992). The "special facts exception" includes two possible theories of liability: "(1) an intentional infliction of injury by known and identifiable third persons; or (2) frequent and recent occurrences of violent crime against persons on the premises by unknown assailants." *Thiele,* 838 S.W.2d at 443. "Special circumstances" exist only when a person knew or should have known of a *probability* of conduct by third persons that would endanger the plaintiff. *Broadus,* 677 So.2d at 202 (*quoting Saccuzzo v. Krystal Co.,* 646 So.2d 595, 596–97 (Ala.1994)).

Other jurisdictions espouse a "prior similar incidents" test, under which the court considers the proximity, time, number and types of prior criminal incidents and then determines if there was a foreseeable likelihood of the particular harm befalling the plaintiff in light of the prior acts. *Polomie v. Golub Corp.,*

---

**3.** We have recognized that in the situation where a proprietor has reason to know of a specific imminent harm to a patron from a known third party, a duty exists to take reasonable steps to protect that patron from the harm. *Hanna v. Cloud 9, Inc.,* 889 P.2d 529, 532 (Wyo.1995). The discussion in this case, however, addresses the duty to prevent an "unreasonably dangerous condition" of the premises when it is reasonably foreseeable that harm from criminal activity is

likely if no measures are taken to remedy the condition. To apply the same standard in both situations would preclude any liability in circumstances where the landlord does not know precisely when the harm will occur, even though the landlord knew that harm was likely. We decline to equate this case to those where the landlord or business owner has an opportunity to directly intervene at the time of the criminal activity.

226 A.D.2d 979, 640 N.Y.S.2d 700, 701 (1996); *McClung*, 937 S.W.2d at 899; Ann E. Phillips, *Violence in the Workplace: Reevaluating the Employer's Role*, 44 Buffalo L.Rev. 139, 169–70 (Winter 1996). This approach has been criticized on several grounds, most notably because it contravenes public policy and notions of fairness by allowing one "free" crime in all instances, thus providing no incentive to take preventative measures until the first victim is denied recovery. *Killebrew v. Sun Trust Banks, Inc.*, 221 Ga.App. 679, 472 S.E.2d 504, 506 (1996); *McClung*, 937 S.W.2d at 899–900.

Another criticism of the "prior similar incidents" test has been the conflicting determinations regarding the requisite "similarity" of a previous incident. Courts have disagreed on whether the prior incident must involve personal injury, the relevant proximity in time of the prior incident and the necessary proximity in location. *Cf. Jardel Co., Inc. v. Hughes*, 523 A.2d 518, 525 (Del. Supr.1987) (no limitation to consideration of only personal violence crimes because property crimes may turn violent if chase ensues); *Vaughn v. Granite City Steel Div. of Nat. Steel Corp.*, 217 Ill.App.3d 46, 159 Ill.Dec. 951, 954, 576 N.E.2d 874, 877 (1991) (twenty incidents on lot in last three years were property crimes, murder was first and only crime of personal violence); *Martinko v. H–N–W Associates*, 393 N.W.2d 320, 322 (Iowa 1986) (experience with criminal activity at defendant's malls in other cities and states not relevant); *Erichsen v. No–Frills Supermarkets of Omaha, Inc.*, 246 Neb. 238, 518 N.W.2d 116, 119–20 (1994) (may consider acts occurring in "fairly contiguous area," and criminal acts that occur near the premises give notice of risk that crime may travel); and *Dwiggins v. Morgan Jewelers*, 811 P.2d 182, 183 (Utah 1991) (one robbery five years earlier insufficient).

In response to the criticisms leveled at the "prior similar incidents" test, many courts adopted a "totality of the circumstances" test. This test allows the court to consider all of the surrounding circumstances, including the nature of the business and its location as well as prior similar incidents. First espoused in *Isaacs v. Huntington Memorial*

*Hosp.*, 38 Cal.3d 112, 211 Cal.Rptr. 356, 695 P.2d 653, 659–61 (1985), many courts followed California's lead. *Killebrew*, 472 S.E.2d at 506; *Sharp v. W.H. Moore, Inc.*, 118 Idaho 297, 796 P.2d 506, 510 (1990); *Rowe v. State Bank of Lombard*, 125 Ill.2d 203, 126 Ill.Dec. 519, 531 N.E.2d 1358, 1364–65 (1988); *Seibert v. Vic Regnier Builders, Inc.*, 253 Kan. 540, 856 P.2d 1332, 1339 (1993); *Small v. McKennan Hosp.*, 403 N.W.2d 410, 412 (1987), *aff'd*, 437 N.W.2d 194 (S.D.1989); *Allright, Inc. v. Pearson*, 711 S.W.2d 686 (Tex. App.1986), *aff'd in part, rev'd in part*, 735 S.W.2d 240 (Tex.1987).

Upon closer review, however, it becomes apparent that courts continue to struggle with an appropriate legal standard to determine the foreseeability of criminal acts as a prerequisite to duty. The "totality of the circumstances" test has also received its share of criticism. The standard has been held to being "too broad a standard, effectively imposing an unqualified duty to protect customers in areas experiencing any significant level of criminal activity." *McClung*, 937 S.W.2d at 900. *See also Ann M. v. Pacific Plaza Shopping Center*, 6 Cal.4th 666, 25 Cal.Rptr.2d 137, 863 P.2d 207, 215 (1993) and *Erickson v. Curtis Inv. Co.*, 447 N.W.2d 165, 169–70 (Minn.1989). Noting the difficulties inherent in both the "prior similar incidents" and the "totality of the circumstances" tests, recent cases have adopted and applied a fourth test which combines the elements of both standards. "The balancing approach acknowledges that duty is a flexible concept, and seeks to balance the degree of foreseeability of harm against the burden of the duty to be imposed." *McClung*, 937 S.W.2d at 901. *See also Ann M.*, 25 Cal. Rptr.2d 137, 863 P.2d at 215. The adoption of a "balancing approach" was most recently articulated in *McClung*, 937 S.W.2d at 902:

A business ordinarily has no duty to protect customers from the criminal acts of third parties which occur on its premises. The business is not to be regarded as the insurer of the safety of its customers, and it has no absolute duty to implement security measures for the protection of its customers. However, a duty to take reasonable steps to protect customers arises if the business knows, or has reason to know,

either from what has been or should have been observed or from past experience, that criminal acts against its customers on its premises are reasonably foreseeable, either generally or at some particular time.

In determining the duty that exists, the foreseeability of harm and the gravity of harm must be balanced against the commensurate burden imposed on the business to protect against that harm. In cases in which there is a high degree of foreseeability of harm and the probable harm is great, the burden imposed upon defendant may be substantial. Alternatively, in cases in which a lesser degree of foreseeability is present or the potential harm is slight, less onerous burdens may be imposed. * * *

As a practical matter, the requisite degree of foreseeability essential to establish a duty to protect against criminal acts will almost always require that prior instances of crime have occurred on or in the immediate vicinity of defendant's premises. Courts must consider the location, nature, and extent of previous criminal activities and their similarity, proximity, or other relationship to the crime giving rise to the cause of action. To hold otherwise would impose an undue burden upon merchants.

(Footnote omitted.) *See also Ann M.*, 25 Cal.Rptr.2d 137, 863 P.2d at 215 and *Sharp*, 796 P.2d at 509–10.

Where this court has considered whether a duty should be imposed, we too have balanced numerous factors to aid in determining whether such an imposition is appropriate. *Ortega*, 902 P.2d at 204; *Mostert v. CBL & Associates*, 741 P.2d 1090, 1098–99 (Wyo. 1987). However, under even the broad "totality of the circumstances" test, appellants did not present facts which are sufficient to establish that Brown should have foreseen the criminal acts against Krier.

 Appellants must show that Brown knew or should have known that there was a likelihood that the antenna would be used for criminal entry through the skylight, which would result in physical injury to someone on the premises. The admissible facts established by appellants demonstrated that in the twenty years preceding Krier's death, there was no record of prior burglaries through the skylight and only one witness recalled such an entry, occurring more than twenty years before the incident at issue. There were two armed robberies and two burglaries between 1975 and 1989. None of these events, more than three years prior to Krier's death, resulted in physical harm to anyone on the premises.

Appellants submitted the affidavit of a Laramie County, Wyoming deputy sheriff that stated the store was located in a "high crime area." Relevant police records from 1987 through the time of Krier's death indicate three fights in the Town and Country Safeway store parking lot, three calls to deal with transients, one suicide, one call regarding a suspicious vehicle, and two domestic relations incidents.

In 1987, five years prior to Krier's death, Brown was struck by a would-be thief attempting to break into his car in the parking lot near the Town and Country Safeway store. The assailant knocked Brown down and ran away. Appellants also note that in 1990, Brown installed a burglar alarm in his office above the hardware store in the shopping center and upgraded the alarm system at the Supermarket Liquors, located on the south side of the Town and Country parking lot area.

Police reports regarding the liquor store reveal that in 1990, two years prior to Krier's death, the liquor store manager was assaulted by an intoxicated customer, several teenagers from Colorado broke the front window and stole a case of beer, and someone broke into an outdoor coke machine. There was also an attempted break-in by a transient at a vacant building south of the liquor store in 1991. Again, none of these events resulted in serious injury to anyone on the premises.

It is undisputed that a few years before Krier's death, an antenna was removed similar to the one used by Ross but located on the south side of the building. Appellants present no evidence that there was any threat of criminal activity or any attempted break-ins resulting from unauthorized access from the antenna which was removed. Neither do they present any evidence that the

remaining antenna created a similar problem prior to Krier's death.

Appellants presented no evidence that the Town and Country Safeway store had expressed any concerns to Brown regarding the safety of the roof or parking area. Neither did appellants present any evidence that those in the building were concerned for their safety.

In sum, assuming the facts in the light most favorable to appellants, the evidence established five break-ins or robberies at the Town and Country Safeway store in twenty-two years, none of which resulted in personal injury. There was absolutely no evidence that Brown knew or should have known that the antenna used by Ross was used for unauthorized access to the roof prior to Krier's death. Even under the totality of the circumstances, this evidence is insufficient to establish that Brown knew or should have known of the existence of general criminal activity which would create an unreasonable risk of danger to Krier if the antenna remained in place. *See Rowe*, 126 Ill.Dec. at 528, 531 N.E.2d at 1367 (three burglaries investigated in one year with no sign of forced entry, defendant advised locks should be changed and knowledge that master key was missing raised material issue of fact as to foreseeability of risk to business tenant); *Erichsen*, 518 N.W.2d at 120 (**ten occasions in previous sixteen months** of thefts, purse snatchings and robberies on or near parking lot were sufficient to establish material issue of risk to customer robbed and assaulted in parking lot); *Doud v. Las Vegas Hilton Corp.*, 109 Nev. 1096, 864 P.2d 796, 800 (1993) (Hilton's knowledge of **numerous criminal activities** on the premises of its casino and in the parking lots was sufficient to support constructive notice of risk of assault); *Small*, 403 N.W.2d at 413 (poor lighting, admitted knowledge of serious problems with vandalism and theft added to testimony of chief of security that more security requested annually but denied and admission by hospital representative that hospital had been very fortunate that no previous assault had occurred were sufficient to establish duty to protect from rape and murder in parking lot); and *McClung*, 937 S.W.2d at 904 (police

records for seventeen months prior to abduction from parking lot reflected 164 criminal incidents, including bomb threat, fourteen burglaries, twelve reports of malicious mischief, ten robberies, thirty-six auto thefts, ninety larcenies, and one attempted kidnapping on adjacent parking lot and nearby competitors provided outdoor security measures, manager of store testified he would not hold sidewalk sales or place merchandise outside of store established risk of harm foreseeability).

### C. RUSK—CO-EMPLOYEE LIABILITY

Appellants also claim that Rusk was culpably negligent as shown by several aspects of his conduct. Appellants identify Rusk's failure to request a burglar alarm; failure to request that Brown remove the antenna; and failure to request bars or some other covering for the fiberglass skylight. Appellants allege that the import of Rusk's inaction is compounded by his deliberate failure to ensure that the new Safeway procedures, which required that more than one employee be present when opening and closing a store, would be followed. The new Safeway's Denver, Colorado Division Store Policy Manual states: "It is Division policy that no one will be permitted to work alone." The reason for the policy is stated in the Store Policy Manual as follows:

> The purpose of establishing store opening and closing procedures is to protect our employees from bodily harm that could be inflicted during an armed robbery or the interruption of a burglary. Statistics show the majority of robberies occur early in the morning or at closing time. Being alert to these possibilities and following established procedures will minimize the risks.

Rusk was the store manager at the Town and Country Safeway store from 1979 through 1994, and was responsible for all operations at the store. On the morning that Krier was killed, Rusk originally had scheduled Krier to work alone. At the last minute, however, Rusk scheduled another employee, Louis Salazar (Salazar), to be present with Krier during opening. As was his habit, however, Salazar was late for work and Krier proceeded to enter the grocery store alone.

Appellants contend that Rusk's knowledge of Salazar's habitual tardiness, his knowledge that Krier's usual site check of the building would not discover an entry through the roof, and Rusk's chronic failure to follow the two-man policy present factual issues regarding Rusk's degree of negligence.

 For appellants to prevail on their claims against Rusk, they must show that Rusk was culpably negligent. *Copp v. Redmond*, 858 P.2d 1125, 1126 (Wyo.1993). We have defined culpable negligence as the intentional commission of " 'an act of unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm will follow.' " *Smith*, 893 P.2d at 716 (*quoting Baros*, 780 P.2d at 343). Willful misconduct is distinguished from ordinary negligence by the actor's state of mind. " 'In order to prove that an actor has engaged in willful misconduct, one must demonstrate that he acted with a state of mind that approaches intent to do harm.' " *Smith*, 893 P.2d at 714 (*quoting Baros*, 780 P.2d at 343).

Assuming the facts in the light most favorable to appellants, the record does not reveal a disputed issue of material fact that Rusk held the necessary state of mind reaching culpable negligence. Rusk testified in deposition that he was not aware he had any responsibility for the antenna or security for the roof, believing that Brown was responsible for those areas. Neither did he understand that his position entailed the authority to demand a burglar alarm. While his actions may have been less than reasonable, his reliance on the judgment of others does not amount to evidence of "willfulness." *See Stephenson v. Pacific Power & Light Co.*, 779 P.2d 1169, 1175 (Wyo.1989).

Similarly, the failure to follow safety procedures may constitute evidence of ordinary negligence, but they do not demonstrate a state of mind consistent with culpable negligence, which requires knowledge or obviousness of a high probability of harm. *McKennan v. Newman*, 902 P.2d 1285, 1287-88

(Wyo.1995) (*quoting Poulos v. HPC, Inc.*, 765 P.2d 364, 366 (Wyo.1988)). Awareness of a possibility of harm is insufficient. Appellants must show that Rusk knew there was a ***high probability*** that Krier was in danger of bodily harm. There is absolutely no evidence that any Town and Country Safeway store employee had been threatened with harm, let alone seriously injured or killed, while opening a Cheyenne Safeway store prior to Krier's tragic confrontation. We in no way condone Rusk's cavalier attitude toward his responsibility to his co-employees, nor do we approve of the fact that he continued to schedule solitary employees to open the store after Krier's murder. However, we must find, as a matter of law, that there is insufficient evidence to establish Rusk had a state of mind "approach[ing] an intent to do harm" prior to Krier's murder. *Smith*, 893 P.2d at 714 (*quoting Baros*, 780 P.2d at 343).

## V. CONCLUSION

Safeway 46 was not in possession or control of the Town and Country Safeway store premises for the purpose of imposing a duty to protect from criminal acts of third persons. Likewise, Brown did not have possession and control of the roof of the Town and Country Safeway store other than for maintaining the structural integrity of the building. Neither did Brown have a duty to remove the antenna located next to the Town and Country Safeway store because, even under the broadest of standards, the criminal acts resulting in Krier's death were not reasonably foreseeable. Finally, appellants failed to raise a material issue of fact which would support the claim of culpable negligence against Rusk.

Summary judgment is affirmed.